**FILED**
**Jan 29, 2020**
**02:22 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Linda Spaulding, | ) Docket No.: 2019-01-0195 |
|       **Employee,** | ) |
| v. | ) |
| Avants Operations, LLC, | ) State File No.: 65356-2018 |
|       **Employer,** | ) |
| And | ) |
| Employers Assurance Company, | ) Judge Thomas Wyatt |
|       **Carrier.** | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING TEMPORARY PARTIAL DISABILITY BENEFITS

This Expedited Hearing concerned whether Linda Spaulding is entitled to temporary partial disability (TPD) benefits. Avants Operations, LLC, terminated TPD benefits when Ms. Spaulding declined available work on the belief that Avants could not accommodate the treating physician's restriction against working on a slippery floor. Ms. Spaulding also asked for an order requiring Avants to authorize prescribed treatment faster. For the reasons below, the Court holds Ms. Spaulding did not establish entitlement to TPD benefits but did establish entitlement to ongoing medical benefits.

### History of Claim

Avants hired Ms. Spaulding to work as a cook at a Zaxby's restaurant. On April 18, 2018, she arrived for her first day of work but suffered injuries when she fell on a wet floor before clocking in. Just before her arrival, Avants's manager, Buck Crotts, had tried to remove water from the floor where Ms. Spaulding fell. The water had gathered while Mr. Crotts rinsed salad items. Ms. Spaulding testified her right leg "bent double" under the weight of her body when she struck the floor.

Ms. Spaulding selected orthopedist Dr. Todd Bell from a panel. Dr. Bell performed surgery for a right-patellar chondroplasty and repairs of tears in her quadriceps muscle and lateral meniscus. Ms. Spaulding used crutches for five months after surgery,

1

which led to callouses and bruises on both hands and bilateral hand and arm pain. She reported these problems to Dr. Bell, but he did not provide treatment.

Dr. Bell eventually returned Ms. Spaulding to restricted-duty work on December 3, but he only took her right-leg injury into consideration when doing so. He prohibited her from working on slippery floors, walking or standing for over one hour per day, and bending, squatting, or climbing. These restrictions remained in place until Dr. Bell ordered functional-capacity testing several months later.

Avants offered to accommodate the restrictions by allowing Ms. Spaulding to sit in a chair while working. Other employees would bring her everything she needed to perform her job. As to the restriction against working on a slippery floor, Mr. Crotts testified that Avants would not assign Ms. Spaulding to work in the kitchen, where most spills occurred, and he purchased rubber mats to provide her a non-slippery surface in her immediate work area.[1] He also stated Ms. Spaulding could avoid passing through the kitchen for bathroom breaks by walking around the restaurant's exterior and using the customers' bathroom. He said management could punch the time clock for Ms. Spaulding.

Ms. Spaulding argued that these accommodations did not reasonably protect her from another fall because:

- she fell in the same area where she would be working;
- she fell despite wearing shoes with non-slip soles;
- she fell even after Avants's manager had just cleaned up water from the floor where she fell;
- she slipped again on a slick floor when she came in after her injury;
- Mr. Crotts conceded that spills occur every day in the food preparation area of the restaurant;
- her work injuries make another fall more dangerous to her; and
- three rubber mats were insufficient to cover all areas of the floor on which she might need to walk.

Ms. Spaulding also testified that, at the time Avants offered her restricted duty, she could not perform activities of daily living without experiencing excruciating upper-extremity pain. She contended that pain would preclude her from food preparation.

Avants paid TPD benefits for two months while the parties debated accommodations. Finally, Avants sent Ms. Spaulding a letter requiring that she report to work on February 1. Avants terminated TPD benefits when she failed to do so.

---

[1] Ms. Spaulding testified that Mr. Crotts did not inform her about purchasing mats. Mr. Crotts testified to the contrary.

2

Regarding ongoing treatment, Dr. Bell referred Ms. Spaulding to orthopedist Dr. Mark Freeman to determine whether she needed further knee treatment. Dr. Freeman reviewed a post-surgery MRI and concluded that she did not need a knee replacement. On the cause of her continued symptoms, Dr. Freeman wrote, "[i]t is possible that her injury did aggravate her underlying degenerative disease but she had pre-existing degenerative changes that were significant prior to her injury or quad repair surgery."[2] Ms. Spaulding presented no evidence of any proposed treatment for her right leg.

Turning to Ms. Spaulding's upper extremities, Avants initially sent her to Dr. Peter Lund, who stated that her problems were not related to using crutches. Avants then allowed Ms. Spaulding to see hand surgeon Dr. Marshall Jemison for a second opinion.[3] He ordered nerve-conduction testing and diagnosed mild carpal-tunnel syndrome, trigger-finger conditions, and bilateral thumb arthritis. Dr. Jemison concluded that all diagnoses other than the arthritis were "primarily related to prolonged crutch use" and ordered surgery on the left hand and an injection on the right.

Avants announced during the hearing that it authorized Dr. Jemison to treat Ms. Spaulding's compensable upper-extremity problems, but it submitted the proposed treatment to utilization review, which delayed treatment. However, Avants was in the process of scheduling the surgery authorized by utilization review. Avants's counsel also confirmed that it would reinstate temporary benefits benefits if Ms. Spaulding became disabled from working following surgery.

Regarding work restrictions, Ms. Spaulding is no longer under those placed by Dr. Bell. On October 9 2019, she underwent a functional capacity evaluation that resulted in permanent restrictions on her ability to lift, push, pull, stand, and walk, but she is not restricted from working on slippery floors.

### Findings of Fact and Conclusions of Law

Ms. Spaulding must come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court first considers her claim for temporary partial disability benefits.

The Workers' Compensation Law provides benefits for partial disability when an employee is able to work, but only under restrictions. The Law entitles recovery of

---

[2] Before she worked for Avants, Ms. Spaulding underwent several surgeries for alignment problems with her right patella and to repair torn cartilage and a torn meniscus in her right knee.

[3] It was not clear if Ms. Spaulding selected Dr. Jemison from a panel.

3

"sixty-six and two thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." Tenn. Code Ann. § 50-6-207(1)(B). To recover, Ms. Spaulding must show she is likely to establish that: (1) she suffered a disability from working as the result of a compensable injury; (2) a causal connection exists between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Const. Co., Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016).

Here, the crucial issue is whether the circumstances justified Ms. Spaulding's refusal to return to work in a restricted-duty position. She contended that Avants could not ensure her work on a non-slippery floor as required by Dr. Bell, and thus her refusal to return was reasonable. She further argued she was disabled because she could not perform food preparation because of upper-extremity pain. Avants argued that Ms. Spaulding artificially created her own disability by not trying to see if its restricted-duty offer accommodated her restrictions. Upon consideration of the evidence presented, the Court holds Ms. Spaulding did not carry her burden on this issue.

In determining an employee's reasonableness in declining restricted work, the Court must look both at the reasonableness of an employer's offer of restricted-duty work in light of the employee's restrictions and, when the employee fails to avail herself of the restricted duties offered, the reasonableness of the employee's decision to decline the work. *See Hardin v. Royal & Sunalliance Ins.*, 104 S.W.3d 501, 505 (Tenn. 2003).[4]

Here, the Court holds that Ms. Spaulding will not likely prevail at trial in showing that Avants's restricted-duty job offer was unreasonable. The Court notes that Avants provided a chair to accommodate the standing/walking restriction imposed by Dr. Bell, and it permitted other employees to bring items to her so she could avoid walking for those items herself. While Avants could not ensure an entirely non-slippery work environment, it purchased mats to create a non-slippery floor in Ms. Spaulding's immediate work area and fashioned her job duties to prevent her need to walk in areas where spills were more likely to occur.

The Court further holds that Ms. Spaulding will not likely prevail in showing that she reasonably declined Avants's offer of a restricted-duty job. In *Tryon v. Saturn Corp.*, 254 S.W.3d 312, 329-330 (Tenn. 2008), the Supreme Court discussed numerous cases considering the award or denial of benefits following an injured employee's declination of restricted-duty work. The circumstances leading to denial included an employee's decision to decline work because of anxiety about exceeding work restrictions and an employee's failure to return to work because he believed the employer was going to sell

---

[4] The *Hardin* decision arose under the previous law's application of a cap on permanent partial disability benefits. The Court considers the analysis of the underlying issue here to raise identical considerations.

the business to someone who would fire him. In *Iacono v. Saturn Corp.*, No. M2008-00139-WC-R3-WC, 2009 Tenn. LEXIS 45, at *18 (TN. Wrk. Comp. Panel Mar. 12, 2009), the Panel affirmed a denial of benefits when the employee declined restricted-duty work because he feared he would be fired for an inability to work "at 100%."

The Court recognizes that Ms. Spaulding's fall caused serious injury, so she was genuinely concerned about re-injury. However, her refusal to try to determine if Avants's offer would accommodate her restrictions precludes the Court from deciding her TPD claim in her favor. With no experiential context to consider here, the Court can only speculate whether she could perform the restricted-duty job Avants offered her.

In accordance with the above authority, the Court, at this time, denies Ms. Spaulding's claim for TPD benefits. The Court is not ignoring Ms. Spaulding's testimony about disability from upper-extremity pain. However, she did not present medical evidence establishing disability or restrictions based on this pain.

Regarding the timeliness of authorizing medical benefits, it appears delays have occurred, first, by an unfavorable causation opinion and, more recently, by the utilization review process. The Court encourages Avants to act with reasonable promptness as to the provision or denial of treatment prescribed by authorized physicians. Here, however, Ms. Spaulding did not show that Avants denied any of Dr. Jemison's treatment recommendations. Therefore, the Court is not in a position to make a decision regarding medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Spaulding's claim for temporary partial disability benefits is, at this time, denied.

2. Avants shall provide reasonable and necessary treatment of Ms. Spaulding's work injuries in a timely fashion in view of statutory procedures.

3. This case is set for a Status Hearing at **10:00 a.m. Eastern Time on April 30, 2020.** You must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. You must call in on the scheduled date and time to participate. Failure to call might result in a determination of the issues without your input.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by**

5

email to WCCompliance.Program@tn.gov **no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED January 29, 2020.**

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits: The Court considered the following exhibits introduced as evidence during the Expedited Hearing:

1. Affidavit of Linda Spaulding
2. Correspondence between Ms. Spaulding and employer/carrier representatives (admitted for identification—the Court did not consider this evidence under hearsay considerations)
3. Return to work letter
4. Physician's Care records
5. Dr. Todd Bell's records
6. Dr. Mark Freeman's records
7. Dr. Marshall Jemison's records
8. Dr. Peter Lund's records
9. Functional Capacity Evaluation—Benchmark Physical Therapy
10. Utilization review letter
11. Interrogatory responses
12. Bankruptcy records (admitted for identification—sustained relevancy objection)
13. 2018 Tax return (admitted for identification—sustained relevancy objection)
14. List of Temporary Disability Benefits payments
15. Utilization review letter—(overruled relevancy and hearsay objections)

Technical record: The Court considered the following filings in its consideration of the issues presented in the Expedited Hearing:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing form
4. Employer's Position Statement and Exhibit List
5. Employee's addition to issues to the Dispute Certification Notice
6. Employer's Supplemental Exhibit List

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on January 29, 2020.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Linda Spaulding Employee | X | X | eagleswingsfly@aol.com<br>P.O. Box 15345<br>Chattanooga, TN 37415 |
| Benjamin Reese Employer's Attorney | | X | btr@smrw.com |

_Penny Shrum_    n/permission

**Penny Shrum, Court Clerk**
Wc.courtclerk@tn.gov

7